## In re HARTMAN.

(District Court, M. D. Pennsylvania. January 20, 1909.)

### No. 1,169.

1. EVIDENCE (§ 461*)—PAROL EVIDENCE—WRITTEN CONTRACT—CONTRADICTION.

Parol proof of facts leading up to the execution and delivery of a written contract, to show the considerations moving the parties thereto, is not a violation of the parol evidence rule.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2129; Dec. Dig. § 461.*]

2. BANKRUPTCY (§ 316*)—CLAIMS—CONTINGENT LIABILITIES.

On dissolution of a firm consisting of the bankrupt and his father, the bankrupt executed an instrument by which he agreed to pay to the father $8,000, with interest annually, at the bankrupt's election, at any time during the father's life, or to his heirs, executors, administrators, or assigns within five years after the father's death; the father agreeing not to make any disposition of any part of his estate in such a manner as would deprive the bankrupt of any interest or share that he or his heirs, executors, administrators, or assigns might or would have or be entitled to in his estate, if he had or should die intestate. Held, that the father's claim against the son, notwithstanding bankruptcy had intervened, was not a present and enforceable liability, but a deferred and contingent one, and was therefore not a provable claim against the son's estate under Bankr. Act July 1, 1898, c. 541, § 63a (1), 30 Stat. 562, 563 (U. S. Comp. St. 1901, p. 3447), authorizing proof of a fixed liability evidenced by a written instrument absolutely owing at the time of filing the bankruptcy petition, whether then payable or not.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. On exceptions to report of H. A. McKillip, referee, sur claim of I. W. Hartman.

H. Montgomery Smith, for excepting creditors.
H. M. Hinckley, for claimant.
A. W. Duy, for bankrupt.

ARCHBALD, District Judge. The question here is whether the obligation which is the basis of the claim that has been proved against the bankrupt by his father, I. W. Hartman, was absolute or qualified. This is to be judged, of course, by reference to the obligation itself. But it did no violence to the rule against the contradiction of a writing by parol to allow proof of the facts leading up to its being given; these merely enabling us to better understand the considerations by which the parties were moved to it. The obligation in terms is as follows:

"In consideration of the agreements and undertakings herein set forth, Robert E. Hartman hereby acknowledges himself to be indebted to I. W. Hartman in the sum of eight thousand dollars ($8,000), to bear interest from the date hereof at the rate of five per centum per annum. The said principal debt or sum to be payable, at the discretion of the said Robert E. Hartman, to the said I. W. Hartman during his lifetime, or five years after his death to his heirs. And the said Robert E. Hartman reserves the right to pay any part or all of said debt during the lifetime of I. W. Hartman, or, in the event of his death, before it is fully paid, reserves the right or privilege to pay any part or all of said principal sum or debt to the heirs of the said I. W. Hartman any time before the expiration of the said five years.

"In consideration of the foregoing obligation, and of the prompt payment of the annual interest therein provided for, the said interest to be paid on or before the first day of January of each year after the date hereof, I. W. Hartman hereby agrees that he will make no disposition of all or any part of his estate in any manner, by will or otherwise, so as to effect a change or in any way deprive the said Robert E. Hartman of any interest or share that he or his heirs, executors, administrators, or assigns might or would have or be entitled to in his estate as if he had or should die intestate; and it is hereby agreed that the undertakings, agreements, or obligations of each of the parties hereto are the consideration for the agreement and the obligation of the other party hereto as above set forth, and that this paper is executed in duplicate—original copies, one to be held by each of the parties hereto.

"In witness whereof, the parties have hereunto set their hands and seals this first day of January, A. D. 1902.     Robt. E. Hartman. [Seal.]
                                                          "I. W. Hartman.  [Seal.]"

"Witness present: L. E. Waller."

It seems from the evidence that I. W. Hartman, the present claimant, and his son, the bankrupt, had been in business together, and the father wanted to withdraw. In settling up their affairs to this end, on January 1, 1902, the father conveyed to his son two pieces of real estate, together valued at $25,000, but incumbered by separate mortgages to the extent of $17,500, leaving an estimated equity of $7,500, of which the son got the benefit in the transfer, in addition to which there was a book account against him of $500 in his father's favor; the two together making $8,000, the amount of the obligation in controversy. While the father parted with valuable property, immediate payment by the son was not contemplated or required; the son stipulating for the time specified by which, at his discretion, he was not to be called upon until five years after his father's death, merely paying

interest at 5 per cent. per annum meantime. The father wanted to make it three years, but the son held out for five, and it was agreed to. The father also suggested that the son should be content with what he had got, and not ask anything of him by way of inheritance. But the son thought otherwise, and even exacted a stipulation that he should not be deprived of any part of his share as heir on the death of his father, and again the father yielded. This was the arrangement between them, and the writing was drawn up in accordance with it, and the question is now as to the effect to be given to it.

It is provided by the bankruptcy act (Act July 1, 1898, c. 541, § 63a, 30 Stat. 562, 563 [U. S. Comp. St. 1901, p. 3447]) that:

"Debts of the bankrupt may be proved and allowed against his estate, which are (1) a fixed liability as evidenced by a judgment or an instrument in writing absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon," etc., or which are "(4) founded upon an open account or upon a contract express or implied."

Admittedly the claim in controversy, in order to be provable, must be brought within one or other of these heads, which in effect means that it must meet the requirements of the first; for if the debt involved is not provable as a fixed liability, absolutely owing at the time that bankruptcy intervened, it can stand no better as founded on a contract, express or implied, being clearly unenforceable as such, at this time.

Did, then, the bankrupt owe his father $8,000 absolutely when the petition was filed? It is to be noted as to this that, while in the obligation the bankrupt acknowledges himself indebted to his father in the sum named, payment other than that of interest is left entirely at his discretion, both in time and amount, and whether to his father in his lifetime, or to his heirs after his death, except that he must pay within five years after that event. This and the payment of interest annually are the only things absolute about it, and even the nonpayment of interest does not make the principal become due. It is, however, payable in the end, and, being fixed in amount, the act to that extent is satisfied. Neither is this qualified by the fact that some part of it may possibly come back to the son again with the share he is to get from his father's property. He must first pay before he is entitled to anything again, as the whole may be needed to satisfy creditors; or, even if this does not prove to be the case, payment may be exacted as essential to a proper settlement of the estate before it is distributed.

It is provided, however, and made a consideration of the obligation, that if the interest stipulated for is promptly paid the father shall make no disposition of his estate, by will or otherwise, so as to deprive his son of the share to which he would be entitled as heir, if he (the father) died intestate. This introduces a contingency which clearly qualifies the obligation to pay existing outside of it. There being nothing but his promise to prevent the father from parting with his property by deed or will, to the detriment of the son, in breach of the agreement, not until the father is dead will the chance of this be removed, and not until then, therefore, can the liability of the son be regarded as absolute. The son, no doubt, may waive this, if he

chooses, and pay his father in his lifetime, as the agreement provides. But he is not bound to; and unless at the end the father is found to have performed his part of the agreement in this way, the son can refuse to pay, as can the trustee now, representing him. It may be that, by this construction of the agreement, the father loses the benefit of the property transferred to the son, which goes to the other creditors. But he took no lien, by way of mortgage or judgment, as he very properly might have done, in order to protect himself, being apparently content with the simple promise of his son, and the result is no different, therefore, from what it would have been, if, outside of any question of bankruptcy, creditors had got judgment and levied on the property, which would have thus gone to satisfy them.

Nor does it follow, because the son has become bankrupt, that he will not be able to comply, either as to the payment of the annual interest or the principal at the time fixed for it, thus constituting an anticipatory breach of the agreement, as it is designated according to some of the cases. In re Neff, 19 Am. Bankr. Rep. 23, 157 Fed. 57, 84 C. C. A. 561. Indeed, being relieved of his other debts, he may be all the better able to do so, for which there will be every incentive, in order to save his inheritance. But, whether that shall prove to be the case or not, the fact remains that, as the agreement stands, there is no present enforceable liability, but only a deferred and contingent one, which, according to the bankruptcy act, is not provable.

The exceptions are sustained, and the case is sent back to the referee, with directions to disallow the claim.